**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOELLYN CAWLEY, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| v. | : | |
| | : | |
| THE ADVOCACY ALLIANCE (TAA), | : | NO. 11-6745 |
| ALEX JOSEPH HAZZOURI, | : | |
| DEBBIE ZIELINSKI, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**MEMORANDUM**

BUCKWALTER, S. J.                                                                        March 6, 2012

 Plaintiff Joellyn Cawley ("Cawley") brings claims against her former employer and two of

its employees, Defendants The Advocacy Alliance ("TAA"), Alex Joseph Hazzouri ("Hazzouri"),

and Debbie Zielinski ("Zielinski"), for alleged violations of the Family and Medical Leave Act

("FMLA"), 29 U.S.C. § 2601 et seq., and the Employee Retirement Income Security Act ("ERISA"),

29 U.S.C. § 1001 et seq.  Presently before the Court is Defendants' Motion to Dismiss pursuant to

Federal Rules of Civil Procedure 12(b)(3) and (b)(6), alleging that Plaintiff's Complaint should be

dismissed for improper venue and for failure to state a claim upon which relief can be granted.  In

the alternative, Defendants move for the case to be transferred to an alternative venue under either

28 U.S.C. §§ 1404(a) or 1406.  For the reasons that follow, the Court transfers this action to the

United States District Court for the Middle District of Pennsylvania pursuant to § 1404(a).

**I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

 On January 25, 2002, Cawley was hired and employed as an administrative assistant by

Defendant TAA in Lackawanna County, Pennsylvania.  (Compl. ¶¶ 2, 8.)  TAA is headquartered in

Scranton, Pennsylvania. (Id. ¶ 2.) Defendant Hazzouri served as Cawley's supervisor and Defendant

Zielinski was her fellow employee at TAA.  (Id. ¶¶ 3, 4.)

　　　While employed at TAA in January of 2011, Cawley was diagnosed with "physical and

mental conditions," and therefore took a short-term leave of absence.[1]  (Id. ¶¶ 9, 10.)  Plaintiff

returned to work on January 24, 2011, but found she was unable to continue working because certain

work tasks exacerbated her physical symptoms.  (Id. ¶ 15(b).)  Plaintiff therefore resumed her short-

term leave of absence on February 4, 2011.[2]  (Id. ¶ 15(f).)  Plaintiff asserts that TAA unlawfully

terminated her employment on April 29, 2011 while she was on legally-protected FMLA leave.  (Id.

¶ 15(*l*).)  Additionally, she asserts that TAA unlawfully denied employment benefits owed to her by

ERISA, (Id. ¶ 26), and that Defendants Hazzouri and Zielinski breached fiduciary duties that they

owed her under ERISA by making affirmative misrepresentations and conflicting and ambiguous

statements to an employee.  (Id. ¶ 23.)

---

[1] Plaintiff alleges additional facts regarding her medical condition and issues related to her leave of absence in her Response in Opposition.  The Court, however, cannot consider these supplementary facts because they were not contained in Plaintiff's Complaint.  See Hammond v. City of Phila., No. Civ.A.00-5082, 2001 WL 823637, at *2 (E.D. Pa. June 29, 2001) ("A party may not rely on new facts in submissions in response to a motion to dismiss to defeat the motion.").

[2] Whether Plaintiff's leave was characterized as "short-term disability leave" or "FMLA leave" is in dispute.  There is also some discrepancy as to when exactly Plaintiff's leave period began.  Specifically, Plaintiff was already on leave between January 10 and 21, 2011 for a short-term disability.  (Id. ¶ 15(a).)  Plaintiff returned to work for a short period of time on January 24, 2011, but soon thereafter "continued" her medical leave on February 4, 2011 due to "an exacerbation of her physical symptoms caused by the work tasks."  (Id. ¶ 15(e–f).)  Plaintiff asserts that Defendant Zielinski incorrectly characterized and predated this leave period as "FMLA leave" beginning on January 10, 2011, when it should have started on January 25, 2011—her "hiring anniversary."  (Id. ¶ 15(c).)  The characterization and timing of this leave period is a matter to be addressed when discussing the merits of this legal action, and the Court therefore renders no conclusions on this issue.

On October 28, 2011, Plaintiff filed a Complaint with this Court alleging that the Defendants violated both the FMLA and ERISA when they unlawfully terminated her employment position. On January 30, 2012, Defendants moved to dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(3) and (b)(6), asserting that Cawley filed suit in an improper venue and failed to state a claim upon which relief could be granted. In the alternative, Defendants requested that this case be transferred to an alternative venue pursuant to 28 U.S.C. § 1404(a) or § 1406. Plaintiff filed a Response in Opposition[3] on February 7, 2012.

## II.   DISCUSSION

Federal Rule of Civil Procedure 12(b)(3) states that improper venue may serve as a basis for dismissal of a case. Fed. R. Civ. P. 12(b)(3). When deciding whether to dismiss a case based upon improper venue, the Court must accept as true all allegations set forth in the plaintiff's complaint. See Leone v. Cataldo, 574 F. Supp. 2d 471, 483 (E.D. Pa. 2008) (further citation omitted). Moreover, the defendant moving to dismiss bears the burden of showing that venue is improper. Id. (further citation omitted).

The parties dispute whether venue was appropriately laid in the Eastern District of Pennsylvania. Plaintiff contends that venue is proper here because Defendants regularly conducted business here and the alleged acts of unlawful conduct arose in this District. (Compl. ¶ 7.) Defendants respond that venue is improper because Plaintiff has failed to allege sufficient facts to establish venue in the Eastern District. (Defs.' Mot. Dismiss 12.) Defendants therefore request the Court to dismiss Plaintiff's claims, or, in the alternative, transfer the case to the Middle District of

---

[3] Although Plaintiff has titled her filing as a "Motion in Opposition to the Defendants' Motion to Dismiss," its proper characterization is a Response in Opposition and the Court therefore treats it as such.

Pennsylvania.  (Id.)

In federal court, change of venue is governed by either 28 U.S.C. § 1404(a) or 28 U.S.C. §1406.  Section 1404(a) provides for the transfer of a case where both the original and requested venue are proper, but the transferor court finds another venue to be more appropriate "for the convenience of the parties and witnesses [and] in the interest of justice."  28 U.S.C. § 1404(a); Jumara v. State Farm Ins. Co., 55 F.3d 873, 878 (3d Cir. 1995);  see also Silva v. Mayo Clinic, No. Civ.A.04-1519, 2004 WL 1563018, at *2 n.1 (E.D. Pa. July 13, 2004).  On the other hand, § 1406 applies where the original venue is improper, and provides that the district court in the originating venue can either transfer the case or dismiss it, regardless of whether or not the court had personal jurisdiction over the defendants in the first place.  See Wojtunik v. Kealy, No. Civ.A. 02-8410, 2003 WL 22006240, at *2 (E.D. Pa. Aug. 26, 2003) (citing Goldlawr v. Heiman, 369 U.S. 463, 466 (1962)).  A determination of which statutory provision applies in a given case is important because the Third Circuit requires the application of different factors under each statute.  Wojtunik, 2003 WL 22006240, at *3.  In order to properly make such a determination, the Court must first decide whether venue was properly laid in the originating district.  Id.; Jumara, 55 F.3d at 878.  Thus, the Court will first consider whether venue was originally proper in the Eastern District of Pennsylvania, and then will move to the second step of applying the factors under the relevant statutory provision to determine if transfer is appropriate in this case.

     **A.**     **Venue**

The general venue provision governing federal courts is 28 U.S.C. § 1391.  Under certain federal statutes, however, Congress has provided specific provisions that control the proper venue of a claim.  See Wojtunik, 2003 WL 22006240, at *3 (applying specific venue provisions provided

4

for in 15 U.S.C. § 78aa); <u>Silva</u>, 2004 WL 1563018, at *1–2 (applying specific venue provisions provided for by Title VII in civil rights actions).  For actions brought under ERISA, the federal statute itself provides its own requirements for where venue may be properly laid.  <u>See</u> <u>Children's Hosp. of Phila. v. Tricorp Enters., Ltd.</u>, No. Civ.A.06-65, 2006 WL 3229940, at *1 (E.D. Pa. May 11, 2006).  Claims brought under the FMLA, however, are governed by the general venue provision. <u>See</u> <u>James v. Verizon Servs. Corp.</u>, 639 F. Supp. 2d 9, 15 (D.D.C. 2009).

In her Complaint and Response in Opposition, Plaintiff only asserts that venue is proper under the general venue provision.  In their Motion to Dismiss, Defendants allege venue is improper under both the general venue provision and the specific venue provision provided for by ERISA. In such circumstances, the Court should analyze whether venue is proper under either or both statutory provisions.  <u>See</u> <u>Wojtunik</u>, 2003 WL 22006240, at *3 n.6; <u>James</u>, 639 F. Supp. 2d at 11, 15.

### 1.    The Specific Venue Provision Provided by ERISA

In enacting ERISA, Congress intended to limit venue to those jurisdictions in which "the [ERISA] plan is administered, where the breach took place, *or* where a defendant resides or may be found."  29 U.S.C. § 1132(e)(2) (emphasis added).  Meeting the requirements of one of the three bases is sufficient for a plaintiff to properly lay venue in a given district.  Under the statute, the defendant bears the burden of establishing that the plaintiff's choice of venue is improper. <u>Children's Hosp.</u>, 2006 WL 3229940, at *1.

The first provision of the statute requires the Court to determine where the ERISA plan at issue was administered.  Plaintiff contends that while she actually worked in the Scranton office in Lackawanna County, located in the Middle District, she was originally hired to work in the

5

Allentown office, located in the Eastern District.  (Pl.'s Resp. Opp'n 3.)  She also claims that between 2008 and 2011, her work tasks were "more evenly distributed" between the two districts. (Id.) These circumstances, however, are too attenuated to warrant jurisdiction in the Eastern District under this first provision.  At all relevant times, Plaintiff lived and physically worked in Scranton. This is also the site of Defendants Hazzouri and Zielinski's workplaces and TAA's headquarters. As such, Cawley's ERISA plan would have been administered in Scranton, and she plainly would have received her plan benefits there as well.  Accordingly, Plaintiff's basis for venue in the Eastern District is impermissible under the first provision of the statute.

Likewise, the second provision provides that venue may be proper in the district where the alleged breach of the ERISA plan took place.  Courts have taken differing approaches in making this determination.  Some courts have held that a breach takes place in the district where the defendant makes the decision not to honor the plan's benefits, see Turner v. CF&I Steel Corp., 510 F. Supp. 537, 541 (E.D. Pa. 1981), while other courts have found that a plan is breached in the district where the plaintiff actually received the benefits.  See Keating v. Whitmore Mfg. Co., 981 F. Supp. 890, 892 (E.D. Pa. 1997).  In the instant case, an analysis under both approaches favors venue in the Middle District of Pennsylvania.  Since TAA is headquartered and all relevant parties worked in the Scranton office, it can be assumed that Defendants' alleged decision to no longer honor Plaintiff's plan benefits occurred in Scranton as well.  Furthermore, given that at all relevant times Cawley lived and worked in Lackawanna County, she would have received her alleged plan benefits in the Middle District.  Therefore, Plaintiff likewise cannot establish venue in the Eastern District under the second statutory provision.

Cawley is, however, more successful under the third provision of the statute, which permits

the laying of venue in any district where a defendant resides or may be found.  Under this provision,

venue is proper if a defendant has sufficient minimum contacts to support the exercise of personal

jurisdiction over it in a given district.  See Shirley v. First Comp. Ins., No. Civ.A.10-0476, 2010 WL

2079752, at *2 (E.D. Pa. May 19, 2010).  While TAA is headquartered and has its principal office

in Scranton, it maintains offices in other cities located within the Eastern District.  "The maintaining

of a business within this District is precisely the kind of permanent, systematic, and continuous

contact with a jurisdiction that provides general jurisdiction over that party; Defendant takes

advantage of the benefits of doing business in the Eastern District of Pennsylvania, and thereby . .

. has sufficient minimum contacts with this District[.]"  Id.  TAA, therefore, may be found in the

Eastern District of Pennsylvania.  For this reason, venue for Plaintiff's ERISA claims would be

proper in this District.

## 2.      The General Venue Provision

For cases based on federal question jurisdiction—such as Cawley's action—the relevant

general venue statutory section is § 1391(b).  Subsection 1391(b) provides three bases upon which

a plaintiff may establish venue:

> (1) a judicial district where any defendant resides, if all defendants reside in the same
> State, (2) a judicial district in which a substantial part of the events or omissions
> giving rise to the claim occurred, . . . or (3) a judicial district in which any defendant
> may be found if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b).  In subsection (c), the statute further provides that "a defendant that is a

corporation shall be deemed to reside in any judicial district in which it is subject to personal

jurisdiction at the time the action is commenced."  Id. at § 1391(c).

In this case, Plaintiff asserts that venue is proper in the Eastern District of Pennsylvania

because TAA, as a Pennsylvania corporation, can be deemed to reside in this District.[4] As already discussed above in regards to proper venue for Plaintiff's ERISA claims, TAA's maintenance of business locations within the Eastern District serves as sufficient minimum contact with this district for personal jurisdiction purposes.  See Shirley, 2010 WL 2079752, at *2.  As such, venue is also proper in the Eastern District of Pennsylvania under the general venue provision.

**B.      Transfer**

Given that venue could properly be laid in the Eastern District of Pennsylvania, the relevant transfer of venue statute governing this dispute is § 1404(a), which provides that: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  The purpose of this statute is "to prevent the waste of time, energy and money[,] and to protect litigants, witnesses and the public against unnecessary inconvenience and expense."  Wojtunik, 2003 WL 22006240, at *7 (internal citations and quotations omitted).  In ruling on motions to transfer pursuant to this statutory section, "courts have not limited their consideration to the three enumerated factors in § 1404(a)," but rather have considered "variants of the private and public interests protected by

---

[4] Plaintiff makes no argument regarding proper venue based on the residence of Defendants Hazzouri and Zielinski.  For venue purposes, the residence of an individual is equivalent to his or her legal domicile.  See FS Photo, Inc. v. PictureVision, Inc., 48 F. Supp. 2d 442, 446 n.4 (D. Del. 1999) (further citation omitted).  Domicile, in turn, is established by residence and an intent to make the place of residence one's home.  See Krasnov v. Dinan, 465 F.2d 1298, 1300 (3d Cir. 1972).  Here, neither Plaintiff nor Defendants have established Hazzouri and Zielinski's respective residences.  While both parties agree that Hazzouri and Zielinski worked in Scranton, neither the Complaint nor Defendants' Motion to Dismiss states either Defendant's place of residence and/or domicile.  Given this insufficiency of facts and because § 1391(b) allows for venue in a judicial district in which *any* defendant resides, the Court only considers whether venue is proper in the Eastern District based on TAA's residence.

the language of [the statute.]"  Jumara, 55 F.3d at 879.  In Jumara, the Third Circuit put forth two

lists of private and public interest factors for courts to consider when determining whether transfer

is appropriate in a given case.  See id. at 879–80.  The private interest factors include: the plaintiff

and defendant's respective forum preferences, whether the claim arose elsewhere than the originating

venue, the convenience of the parties and witnesses, and the location of books and records.  Id. at

879 (internal citations omitted).  The public interest factors include: the enforceability of the

judgment, the practical considerations that could make the trial easy, expeditious, or inexpensive,

the relative administrative difficulty in the two fora resulting from court congestion, the local interest

in deciding local controversies at home and the respective public policies of both fora, and the

familiarity of the trial judge with the applicable state law in diversity cases.  Id. at 879–80 (internal

citations omitted).  The Court considers each grouping of factors separately below.

### 1.    The Private Interest Factors

The first factor that the Court must consider is the plaintiff's choice of forum.  Generally, a

plaintiff's choice of venue "should not be lightly disturbed."  Id. at 870 (internal citations omitted).

In this case, Cawley's choice of forum is in the Eastern District of Pennsylvania.  However, "when

a plaintiff chooses a forum other than his home forum, that choice receives less deference."

Wojtunik, 2003 WL 22006240, at *8 (internal citations and quotations omitted).  Cawley is a

resident of Springbrook Township, Pennsylvania, which is located in the Middle District of

Pennsylvania.  (Compl. ¶ 1.)  Accordingly, the Court accords her choice of venue less weight since

she filed suit outside her home forum.

The second factor is the defendant's choice of forum.  All three Defendants, through their

undersigned counsel, request that the Court transfer this case to the Middle District of Pennsylvania.

(Def's Mot.Dismiss 12–13.)  Therefore, this factor weighs in favor of transfer.

The third factor requires the Court to consider where the claim arose.  TAA is headquartered in Lackawanna County and all relevant parties worked in the Scranton office.  This is the business location from which Cawley took her leave of absence.  This is also the location in which any mischaracterization of her leave of absence by Defendants would have occurred, as well as the place of employment from which she was allegedly unlawfully terminated.  Furthermore, Cawley's ERISA plan would have been administered in Scranton, and she would have received her plan benefits there as well.  Plaintiff's Complaint alleges no facts indicating that any actions relevant to either her FMLA or ERISA claims occurred in the Eastern District.  As such, this factor weighs heavily in favor of transfer to the Middle District.

The next factor which the Court considers is the convenience of the parties.  Plaintiff claims that she is "much weaker physically as set forth in the Complaint and financially weaker than the Defendants." (Pl.'s Resp. Opp'n 2.)  The Court, however, does not follow Plaintiff's reasoning for this assertion.  If Plaintiff is, as she alleges, weaker both financially and as a result of physical health, then it would be more convenient for her to bring suit in her home forum—the Middle District—rather than bear the financial expense and physical toll on her health that would result from traveling to the Eastern District to litigate her claims.  Therefore, consideration of this factor also favors the Middle District.

The Court must next consider the convenience of the witnesses.  At this point in the proceedings, neither party has provided the Court with a list of any potential witnesses that they

expect to bring forth.[5]  However, given that this dispute is related to Plaintiff's place of employment and administration of ERISA plan benefits—all of which took place in the Middle District—it is more likely that most relevant witnesses will also be located in the Middle, rather than the Eastern, District.  In any event, this factor is only of particular importance "to the extent that the witnesses may actually be unavailable for trial in one of the fora."  Jumara, 55 F.3d at 879.  Defendants assert that "all relevant witnesses are located" in the Middle District.  (Def.'s Mot. Dismiss 13.)  Plaintiff does not dispute this assertion.  As such, the fifth factor also weighs in favor of the Middle District.

The final private interest factor is the location of records and documents.  Cawley avers that this factor "is not a matter of consideration since discovery would not likely require any inspections in this case."  (Pl.'s Resp. Opp'n 2.)  Defendants, however, maintain that all relevant records are located at their corporate headquarters in Scranton.  (Def.'s Mot. Dismiss 13.)  Given Defendants' proffer and Plaintiff's lack of argument to the contrary, the Court finds that this factor once again weighs in favor of the Middle District.

## 2.    The Public Interest Factors

Of the public interest factors, the only one that weighs in favor of either party is the practical consideration which in this case suggests that it is more expeditious and inexpensive to conduct this litigation in the middle district.

After a thorough consideration of both the private and public interest factors put forth by the

---

[5] The only witnesses which could even potentially be identified from Plaintiff's Complaint and Response in Opposition are Dr. Eugene Grady and Dr. Michael Alocci, who were allegedly responsible for Plaintiff's diagnosis and submitted her leave certification forms. (Compl. ¶ 15(d); Pl.'s Resp. Opp'n 6, 8.)  Although not entirely clear from the face of Plaintiff's Complaint, it appears as though these medical professionals are also located in the Middle District.

Third Circuit in <u>Jumara</u>, it is clear that most factors favor the transfer of this case to the Middle District of Pennsylvania. The Court therefore concludes that Defendants have met their burden of showing that this case can be transferred to a different venue.

## III.   CONCLUSION

Although it could be found that Plaintiff properly laid venue for her claims in the Eastern District of Pennsylvania, the Court has carefully weighed and balanced all of the relevant factors under § 1404(a), as it must under the Third Circuit's ruling in <u>Jumara</u>, and therefore finds that this action should be transferred to the Middle District of Pennsylvania. The Court concludes that consideration of all the above indicates that the interests of convenience and justice will be better served in the Middle, rather than the Eastern, District of Pennsylvania. Accordingly, Defendants' request is granted, and Plaintiff's case is hereby transferred to the Middle District of Pennsylvania.[6]

An appropriate Order follows.

---

[6] As noted above, Defendants' Motion raises additional grounds for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). Given that the Court finds that transfer to the Middle District of Pennsylvania is appropriate in this action, however, it declines to address these additional grounds for dismissal. As such, Defendants' additionally asserted grounds for dismissal will remain outstanding, pending resolution by the United States District Court for the Middle District of Pennsylvania.